UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL C. BIANCO                         :
                                          :
        v.                                :        C.A. No. 09-021S
                                          :
MICHAEL J. ASTRUE                         :
Commissioner of the Social Security       :
Administration                            :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Child's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on January 15, 2009 seeking to reverse the decision of the Commissioner. On December 31, 2009, Plaintiff filed a Motion for an Order Reversing the Decision of the Commissioner. (Document No. 8). On March 3, 2010, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the legal memoranda filed by the parties and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 26, 2007 (Tr. 96-97, 100-106), alleging disability since February 4, 2007.  The applications were denied initially (Tr. 47-48, 58-63) and subsequently by a Federal Reviewing Officer.  (Tr. 49-57).  Plaintiff requested an administrative hearing.  (Tr. 70).  On September 4, 2008, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, Plaintiff's father and a vocational expert ("VE") appeared and testified.  (Tr. 18-46).  The ALJ issued a decision unfavorable to Plaintiff on October 1, 2008.  (Tr. 4-17).  The Decision Review Board denied Plaintiff's request for review on December 15, 2008.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in giving significant probative weight to the opinion of a non-examining psychologist, Dr. J. Stephen Clifford, Ph.D. (Ex. 5F), because his opinion was rendered fifteen months prior to the date of the ALJ's decision.  Plaintiff also contends that the ALJ erred by interpreting subsequent raw medical data and determining that no additional limitations in Plaintiff's RFC were warranted.

The Commissioner disputes Plaintiff's claims and argues that the ALJ did not commit such error and that his RFC finding is supported by substantial evidence and must be affirmed.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,

1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the

Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence

six remand, the parties must return to the court after remand to file modified findings of fact.  Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the

completion of remand proceedings.  Id.

IV.     THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.      Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.   Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work

activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is disabled.

20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through

four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138,

144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

        In determining whether a claimant's physical and mental impairments are sufficiently severe,

the ALJ must consider the combined effect of all of the claimant's impairments, and must consider

any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual is disabled.

Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

        The claimant bears the ultimate burden of proving the existence of a disability as defined by

the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and

Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)     Treatment, other than medication, for relief of pain;
>
> (5)     Functional restrictions; and
>
> (6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was twenty years old on the date of the ALJ's decision. (Tr. 21). Plaintiff earned his GED and has no past relevant work history. (Tr. 15-16, 117). Plaintiff alleges disability due to a psychological disorder. (Tr. 111).

Plaintiff was seen by Dr. William Kyros, a Psychiatrist, for outpatient psychiatric treatment from January 26, 2007 through March 21, 2007. (Tr. 242-248). In January and February, his mental

status examinations were generally normal. (Tr. 242-247). In March, Dr. Kyros noted that Plaintiff was non-compliant with medication and advised Plaintiff to revisit in two weeks. (Tr. 248). However, there are no further treatment notes in the record from Dr. Kyros.

On March 5, 2007, Plaintiff was admitted to Rhode Island Hospital due to psychiatric problems. (Tr. 164-168). Plaintiff had no past history of inpatient psychiatric treatment and no past psychiatric medication use. (Tr. 164). At the time of admission, it was noted that the Plaintiff's behavior had been increasingly bizarre, with erratic behavior over the past eight months. Id. It was reported that Plaintiff had seen Dr. Kyros three times since January 2007, on an outpatient basis, but had not started on any medication. Id.

Plaintiff reported current use of marijuana and had a recent DUI arrest. Id. At the time of admission, he denied auditory and visual hallucinations, delusions of reference or thought insertion or removal and any other delusional thoughts. Id. Plaintiff denied mania, distractibility, high risk behaviors, grandiosity or other similar symptoms. Id. Upon examination, Plaintiff was cooperative, and his speech and language were within normal limits. (Tr. 165). His affect was angry and irritable, but he denied manic or anxiety symptoms. Id. No abnormalities were noted with respect to Plaintiff's thought process, orientation, memory, concentration or intellect. Id. He demonstrated poor judgment due to his recent legal problems and poor insight, as he denied a need for a mental health evaluation. Id.

Upon discharge, Plaintiff was diagnosed with bipolar I disorder, manic and marijuana abuse. His Global Assessment of Functioning ("GAF") score was noted to be 35 at that time. (Tr. 167). It was noted that Plaintiff had minimal side effects from medication and that he had increased future

orientation to continue with outpatient medications, at least temporarily, and continue to seek psychiatric care with Dr. Kyros. Id.

Plaintiff was subsequently admitted to St. Joseph Center for Psychiatric Services on March 23, 2007, due to delusions and auditory hallucinations. (Tr. 169-174). At the time of admission, Plaintiff was non-compliant with his medication, and his toxicology screen was positive for cannabinoids. (Tr. 171). After a course of treatment, at discharge, Plaintiff's psychosis had cleared, and he was able to sleep seven to eight hours at night. (Tr. 173). It was noted that Plaintiff had been compliant with medication while in the hospital and that the medication showed good efficacy with no side effects. Id. He was diagnosed with bipolar disorder, not otherwise specified, and cannabis abuse. Id. Plaintiff was given a GAF score of 55-60 at that time. Id.

On June 18, 2007, a nonexamining State Agency Psychologist, Dr. J. Stephen Clifford, completed a Psychiatric Review Technique Form and an RFC Assessment. (Tr. 186-203). He opined that Plaintiff had moderate difficulties in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 196). Dr. Clifford noted that Plaintiff had one or two episodes of decompensation. Id. He further opined that Plaintiff was moderately limited in numerous areas of functioning (Tr. 200-201), but could complete work when he was limited to simple tasks, simple assignments and reduced interpersonal demands. (Tr. 202).

Plaintiff was seen at Gateway Healthcare from April 2007 through November 2007 for his psychiatric problems. (Tr. 204-223). After an initial evaluation with Dr. Robert Zielinski, who noted that he did not have the full records of Plaintiff's history before him (Tr. 222), Plaintiff was diagnosed with bipolar disorder, psychotic disorder and cannabis abuse. (Tr. 223). He was given a current GAF score of 40, with a GAF score of 70 within the past year. Id. Dr. Zielinski noted that

Plaintiff's mental status seemed fairly good and that his father was helping to enforce compliance with his medication. (Tr. 222).

At a subsequent evaluation in May 2007, Plaintiff did not appear manic or psychotic, and there was no indication that he was behaving in a dangerous way. (Tr. 218). A mental status examination was essentially normal with only a bit of constriction on his affect and a mood that appeared a little flat. Id. Dr. Zielinski noted that because Plaintiff was tolerating his medication, the medication was continued without change. Id. In June 2007, Dr. Zielinski noted that Plaintiff was stable. (Tr. 215). Both Plaintiff and his father reported that he was doing well. Id.

In September 2007, Susan Paquette, MSN, PCNS, reported that Plaintiff was doing well on his current medication. (Tr. 207). Plaintiff reported feeling well, sleeping well and enjoying going out with his friends. (Tr. 206). Ms. Paquette warned Plaintiff of the risks of combining alcohol, marijuana and other substances with bipolar disorder and the potential for destabilization. (Tr. 207).

In November 2007, Ms. Paquette reported that Plaintiff was reasonably stable on current medication and had demonstrated some insight into the role of medication and maintaining his stability. (Tr. 204). Plaintiff continued to be bothered by weight gain and sedation, and was agreeable to change his medication to Geodon. Id. In January 2008, Ms. Paquette saw Plaintiff on an emergency basis at the request of his father. (Tr. 277). Plaintiff acknowledged skipping his medication, but then realized that he felt better while taking medication. Id. By February 2008, Plaintiff reported that he was sleeping better and feeling rested in the morning. (Tr. 298). He reported going out with his friends and spending time on the computer. Id. Plaintiff reported feeling good on medication and noted that it made a difference in his life. Id. Plaintiff stated that he felt free of depression, mood, instability and psychosis. Id. Plaintiff's father also reported improvement.

-14-

Id. Due to Plaintiff's improvement, no medication changes were needed. Id. On July 10, 2008, Plaintiff reported feeling better on his medication, and Ms. Paquette noted significant improvement with medication. (Tr. 299). There are no further treatment notes from Ms. Paquette in the record.

In March 2008, Ms. Paquette completed a Supplemental Questionnaire as to Residual Functional Capacity. (Tr. 224-225). She opined that Plaintiff had moderate to severe functional limitations. Id. Ms. Paquette also completed a Substance Abuse Materiality Questionnaire in August 2008 and stated that substance abuse was not a material contributing factor to Plaintiff's disability. (Tr. 302). She stated that Plaintiff's neglect of his hygiene, his isolation, paranoia, anger and physical aggression precluded Plaintiff from maintaining gainful employment. Id.

Plaintiff was admitted to St. Joseph Center for Psychiatric Services on May 22, 2008, on involuntary legal status. (Tr. 283). At the time of admission, it was noted that he had a history of schizoaffective disorder and that he had recently been poorly medication compliant. Id. His toxicology screen at the hospital was positive for marijuana. Id. Plaintiff agreed to be discharged into his mother's care and stated that he understood the need to be compliant with treatment. (Tr. 284). He was discharged with a diagnosis of schizoaffective disorder and marijuana abuse. Id. At the time of discharge he had a GAF score of 60, and his irritability and mood swings improved significantly. Id. He was completely compliant with medication and stated that he looked forward to going home and being complaint with treatment. Id.

## A.    The ALJ's Decision

The ALJ concluded that Plaintiff's bipolar disorder and substance abuse significantly limited Plaintiff's ability to perform basic work activities and thus were "severe" impairments as defined in 20 C.F.R. § 404.1520(c). (Tr. 10). As to RFC, the ALJ found that Plaintiff was physically able

to perform work at all exertional levels but that his psychiatric impairments imposed moderate restrictions in Plaintiff's ability to maintain attention and concentration, and in dealing appropriately with others in the workplace. (Tr. 11). The ALJ indicated that this RFC assessment was supported "by the medical evidence of record that indicated a reduction of symptoms when [Plaintiff] was taking prescribed medication, his sparse history of treatment and lack of medication compliance, his activities of daily living, and the opinion evidence of the state agency consultant [, Dr. Clifford,] who is familiar with the Social Security Administration's disability program." (Tr. 15). Based on this RFC and expert testimony from the VE, the ALJ decided this case adverse to Plaintiff at Step 5 because he was capable of making a successful adjustment to other work that exists in significant numbers in the economy. (Tr. 16).

**B.     The ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC finding is flawed because it is "not supported by a medical opinion from any medical source who had seen all or even most of the medical evidence." (Document No. 8 at 7-8). In particular, Plaintiff faults the ALJ's decision to give "significant probative weight" to Dr. Clifford's opinion because he did not have the benefit of reviewing subsequent psychiatric records. Id. Dr. Clifford rendered his RFC assessment on June 18, 2007 (Ex. 6F) but the record before the ALJ included medical records through 2007 and into 2008. Dr. Clifford's opinion is the only RFC opinion on file from a psychologist or psychiatrist. Although the record contains records from treating psychiatrists, they never specifically opined on Plaintiff's RFC or ability to work.

Plaintiff relies primarily on the First Circuit's per curiam opinion in Alcantara v. Astrue, No. 07-1056T, 2007 WL 4328148 (1st Cir. Dec. 12, 2007). However, Alcantara is distinguishable on its

-16-

facts. In Alcantara, the First Circuit remanded where the ALJ relied "primarily" on the opinion of one non-examining consultant and discounted the opinions of two other non-examining consultants, a treating psychiatrist and a therapist. Id. at *1. The First Circuit found error because the preferred consultant's opinion was both based on a "significantly incomplete record" and was "not well justified." Id. (citing 20 C.F.R. § 416.927(d)). It also found fault with the ALJ's unsupported statement that the record underwent "no material change" after the preferred consultant's opinion was rendered when in fact there was evidence of a subsequent material deterioration of Plaintiff's mental health. Id.

In this case, Plaintiff does not argue that Dr. Clifford's RFC assessment is not well justified. In fact, Dr. Clifford specifically identified the medical evidence which supported his RFC opinion. (Tr. 202). Further, although Plaintiff continued receiving treatment after Dr. Clifford's opinion was rendered, Plaintiff has not shown any material change in his functional abilities during that period. In addition, the ALJ in this case did not rely "primarily" on Dr. Clifford's opinion. Although the ALJ gave Dr. Clifford's opinion "significant probative weight," he did not do so in a vacuum. In other words, the ALJ did not exclusively rely on Dr. Clifford's opinion, and he thoroughly analyzed and considered Plaintiff's statements and testimony as well as a significant body of treating source medical records and Plaintiff's history of noncompliance with his medication regimen. (Tr. 14-15).

When you boil it down, Plaintiff's basic premise is that the ALJ "needed the assistance of a medical expert or consultant" to properly evaluate the medical evidence. (Document No. 8 at 9). However, the decision as to whether or not to utilize a medical expert is within the ALJ's discretion, and the failure to do so is not per se a basis for reversal. See Hodgkins v. Barnhart, No. 03-179-P-4, 2004 WL 1896996 (D. Me. Aug. 25, 2004) (citing Rodriguez Pagan v. Sec'y of Health & Human

Servs., 819 F.2d 1, 5 (1st Cir. 1987)). Thus, the issue in this appeal is not whether the ALJ should

have utilized a medical expert but rather whether the ALJ's RFC finding is supported by substantial

evidence in the absence of medical expert testimony.

Here, the ALJ carefully considered Plaintiff's statements regarding his symptoms and

limitations and simply found that Plaintiff was not entirely credible (Tr. 12) – a determination that

has not been challenged in this appeal. Further, the ALJ found Dr. Clifford's RFC opinion to be

consistent with and supported by the record as a whole including the subsequent treatment records

which are discussed in detail by the ALJ. (Tr. 13-15).

If the Court takes the logic of Plaintiff's argument in this appeal to its extreme, then it

arguably would have to find error every time an ALJ based an RFC assessment on anything but a

consulting expert opinion rendered at or shortly before the ALJ hearing. This is neither practical nor

required. The regulations expressly provide that a claimant's RFC is to be assessed by the ALJ

"based on all of the relevant medical and other evidence" including descriptions and observations

of limitations provided by the claimant and others. See 20 C.F.R. §§ 404.1545(a)(3) and 1546(c).

See also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) (rejecting

the proposition that "there must always be some super-evaluator, a single physician who gives the

[ALJ] an overview of the entire case"). "[I]t is not inappropriate for an [ALJ] to consider the

opinions of state agency doctors in conjunction with other evidence of record...[because the ALJ]

is entitled to piece together the relevant medical facts from the findings and opinions of multiple

physicians." Dietz v. Astrue, C.A. No. 08-30123-KPN, 2009 WL 1532348 at *6 (D. Mass. May 29,

2009).

Although Dr. Clifford was not privy to the subsequent medical records, his opinion is not rendered outdated and irrelevant on that fact alone because doing so would "defy logic and be a formula for paralysis." Sanford v. Astrue, C.A. No. 07-183 ML, 2009 WL 866845 at *8 (D.R.I. Mar. 30, 2009). Here, the ALJ properly relied upon Dr. Clifford's opinion because the subsequent evidence did not reflect any significant change in the Plaintiff's condition when he was compliant with his medication.

Comparing the evidence that Dr. Clifford reviewed and the evidence that he did not see, there was nothing "sufficiently significant that it might alter his conclusions." Sanford, 2009 WL 866845 at *8. Dr. Clifford reviewed records of two psychiatric hospitalizations and several treatment notes. The first hospitalization, on March 5, 2007 occurred when Plaintiff had not yet started on any medication. (Tr. 164). At the time of Plaintiff's second hospital admission on March 23, 2007, it was noted that he was non-compliant with his medication and his toxicology screen was positive for marijuana use. (Tr. 171). After a course of treatment, at discharge, Plaintiff's "psychosis had cleared" and he was able to sleep seven to eight hours per night. (Tr. 173). Plaintiff was compliant with medication while in the hospital, and the medication showed "good efficacy with no side effects." (Tr. 173). Plaintiff was given a GAF score of 55-60 at discharge, indicating only moderate symptoms. Id.

Subsequent treatment notes also indicate only moderate symptoms when Plaintiff took his medication as noted by Dr. Clifford and the ALJ. In a May 10, 2007 evaluation, Dr. Zielinski noted that Plaintiff did not appear manic or psychotic and there was no indication that he was behaving in a dangerous way. (Tr. 218). A mental status examination was essentially normal with only a bit of constriction of his affect and a mood that appeared "a little flat." Id. Plaintiff was tolerating his

-19-

medications well. Id. Similarly, in June 2007, Dr. Zielinski noted that Plaintiff was stable, and both Plaintiff and his father reported that he was doing well. (Tr. 215).

Dr. Clifford considered this evidence and noted that when compliant with medication, Plaintiff was able to function in a setting that provided simple tasks, simple assignments and reduced interpersonal demands. (Tr. 202). In making this assessment, Dr. Clifford also considered evidence that the medication caused some sedation in Plaintiff. Id. Since there is nothing in the records that Dr. Clifford reviewed or the subsequent records that contradict these observations, the ALJ did not commit error in relying upon Dr. Clifford's RFC opinion.

The subsequent evidence does not show any significant change in Plaintiff's condition, except when Plaintiff was not compliant with his medication. (Tr. 277, 283). In fact, the record is fairly consistent on this point both before and after Dr. Clifford rendered his opinion. In September 2007, Ms. Paquette reported that Plaintiff was doing well on his current medication, and Plaintiff reported feeling well, sleeping well and enjoying going out with his friends. (Tr. 206-207). In November 2007, Ms. Paquette reported that Plaintiff was reasonably stable on current medication and had demonstrated some insight into the role of medication and maintaining his stability. (Tr. 204).

While there was a brief deterioration in January 2008, Plaintiff acknowledged skipping his medication, but soon realized that he felt better while taking medication. (Tr. 277). By February 2008, Plaintiff reported significant improvement on medication. (Tr. 298). While Plaintiff was admitted for treatment on May 22, 2008, on "an involuntary legal status," it was again noted that he had been noncompliant with his medication. (Tr. 283). He tested positive for marijuana. Id. At the time of discharge, Plaintiff was given a GAF score of 60, indicating only moderate symptoms, and

it was noted that his irritability and mood swings had improved significantly. (Tr. 284). Ms. Paquette reported significant improvement with medication. (Tr. 299). There is nothing significant in this evidence that could reasonably alter Dr. Clifford's assessment and, in fact, the subsequent evidence is consistent with Dr. Clifford's conclusion that Plaintiff responded "quite well" to his medications. (Tr. 202). The ALJ based his RFC assessment in this case on several elements including Dr. Clifford's opinion, his opinion regarding the credibility of Plaintiff's statements as to his pain and limitations and the medical records of treating sources; and Plaintiff has shown no legal error in the ALJ's evaluation of such evidence.[1] Thus, since the ALJ's RFC finding of moderate limitations in maintaining attention and concentration and dealing appropriately with others in the workplace is sufficiently supported by the record, it is entitled to deference.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED. I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

---

[1] Plaintiff also contends that reliance on Dr. Clifford's opinion was erroneous because he did not have knowledge of Plaintiff's subsequent diagnosis of schizoaffective disorder. However, nothing in the record suggests that such knowledge would have changed Dr. Clifford's RFC opinion. Plaintiff was diagnosed with schizoaffective disorder during his last hospitalization in May 2008. (Tr. 284). His discharge summary indicates that Plaintiff had a history of schizoaffective disorder, and had been previously diagnosed with schizoaffective disorder. (Tr. 283). This is clearly contrary to the rest of the record, which does not contain any reference that Plaintiff had ever been diagnosed with such a disorder; rather, he was consistently diagnosed with bipolar disorder. Even assuming that this is not a clerical error, nothing suggests that such a diagnosis, in and of itself, would change Dr. Clifford's RFC opinion.

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 20, 2010